IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JDL INC. (d/b/a VEGAS IMAGE), LV CANDY LLC, and WORLD POWER CORPORATION (d/b/a GLOBAL AIR SERVICE), individually and on behalf of all others similarly situated, | No. 20-cv-02681 Judge Franklin U. Valderrama |
| Plaintiffs, | |
| v. | |
| VALLEY FORGE INSURANCE COMPANY, | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

COVID-19, a novel coronavirus, has wreaked havoc on the lives of many and caused untold financial losses. This case is but another in a long line of cases in which businesses seek coverage for their financial losses.

Plaintiff JDL Inc. (JDL) owns and operates Vegas Image, a Las Vegas distributor of gambling-themed candy and toys to casinos. R. 26, FAC ¶ 1.[1] Plaintiff LV Candy LLC (LV Candy) is JDL's landlord (collectively, Nevada Plaintiffs). *Id.* ¶ 2. Plaintiff World Power Corporation owns Global Air Service, a New York company that provides travel arrangement, accounting, and tax services (New York Plaintiff, together with Nevada Plaintiffs, Plaintiffs). *Id.* ¶ 3. Plaintiffs purchased property insurance from Valley Forge Insurance Company (Defendant). *Id.* ¶¶ 25–26. After

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

Plaintiffs were forced to suspend or reduce business at their locations due to the COVID-19 pandemic and the resultant closure orders issued by authorities in Nevada and New York, they filed claims with Defendant, who denied coverage. *Id.* ¶¶ 69–70.

Plaintiffs filed this class action suit[2] against Defendant for breach of contract and declaratory relief. FAC. Plaintiffs seek damages for their loss of business income suffered due to the closure orders. *Id.* ¶¶ 6, 82–116. Plaintiffs also seek a declaratory judgment that the losses they incurred are insured losses under their respective policies. *Id.* ¶ 117–144. Before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 31, Mot. Dismiss. For the reasons discussed below, the Court grants Defendant's Motion to Dismiss. The Court finds that the insurance policies do not provide coverage for Plaintiffs' losses.

## Background

JDL is a Nevada corporation that owns and operates Vegas Image. FAC. ¶¶ 1, 21. Vegas Image sells its products to casinos and to the public via its website, VegasImage.com. *Id.* LV Candy, also a Nevada corporation, is JDL's landlord for a building located in Las Vegas, Nevada. *Id.* ¶¶ 2, 22. Nevada Plaintiffs' principal places of business are in Las Vegas. *Id.* ¶¶ 21–22. New York Plaintiff is a New York corporation with a principal place of business in New York. *Id.* ¶ 23. Defendant is a Pennsylvania insurance company, with its principal place of business in Chicago, Illinois. *Id.* ¶ 24.

---

[2]The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Defendant issued Policy No. 4012445241 (the Nevada Policy) to Nevada Plaintiffs for the period of November 14, 2019 to November 14, 2020. FAC ¶ 25. It also issued Policy No. 6011621821 (the New York Policy, together with the Nevada Policy, the Policies) for the period of August 1, 2019 to August 1, 2020. *Id.* ¶ 26.

## I. Policy Language

The Policies contain a Businessowners Special Property Coverage, which provides that Defendant "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss." R. 26-1, Nevada Policy at CM/ECF 17; R. 26-2, New York Policy at CM/ECF 16. "Covered Causes of Loss" include "risks of direct physical loss" unless an enumerated limitation or exclusion applies. Nevada Policy at CM/ECF 18–19; New York Policy at CM/ECF 17–18.

The Policies also include a Business Income and Extra Expense Endorsement whereby Defendant will "pay for the actual loss of Business Income [Plaintiffs] sustain due to the necessary 'suspension' of [Plaintiffs'] 'operations' during the 'period of restoration.'" Nevada Policy at CM/ECF 39; New York Policy at CM/ECF 38. The "suspension" under the Policies must be caused by "direct physical loss of or damage to property at the described premises." *Id.* "The loss or damage must be caused by or result from a Covered Cause of Loss." *Id.* "Suspension" is defined as the "partial or complete cessation of [Plaintiffs'] business activities." Nevada Policy at CM/ECF 36; New York Policy at CM/ECF 35. The "[p]eriod of restoration"

> [b]egins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and [e]nds on the

earlier of: (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when the business is resumed at a new permanent location.

Nevada Policy at CM/ECF 34; New York Policy at CM/ECF 33.

The Policies also include Civil Authority Endorsements, which extend Plaintiffs' Business Income and Extra Expense coverages "to the actual loss of Business Income . . . caused by action of civil authority that prohibits access to the described premises." Nevada Policy at CM/ECF 65; New York Policy at CM/ECF 62. "The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss." *Id.*

Finally, the Policies also contain a "Sue and Labor" provision. This provision requires, in the event of loss of or damage to the Covered Property, Plaintiffs to "[t]ake all reasonable steps to protect the Covered Property from further damage, and keep a record of [their] expenses necessary to protect the Covered Property, for consideration on the settlement of the claim." Nevada Policy at CM/ECF 25; New York Policy at CM/ECF 24.

## II. New York's Closure Orders

In March 2020, New York's Governor, in response to COVID-19, issued a series of Executive Orders which required businesses at first to operate at reduced capacity and later banned all non-essential gatherings of any size (the State Orders). FAC ¶¶ 53–55, 57. On March 25, 2020, the New York City Mayor issued an executive order in response to COVID-19, declaring a state of emergency in New York City and

ordering the closure of all non-essential businesses (the City Order) (together with the State Orders, the NY Closure Orders). *Id.* ¶ 58. On March 20, 2020, New York Plaintiff [3] closed as a result of the NY Closure Orders and resumed operations with limited capacity in early August 2020. *Id.* ¶ 62. New York Plaintiff submitted a claim to Defendant for its losses due to the NY Closure Orders, which Defendant denied. *Id.* ¶ 70.

### III.   Nevada's Closure Orders

On March 20, 2020, the State of Nevada issued a civil authority order and regulations which "closed Non-Essential Businesses, closed Essential Licensed Businesses that could not adopt the required COVID-19 risk mitigation measures, and closed all other businesses that could not adopt the required COVID-19 risk mitigation measures" (the Nevada Closure Order) (together, with the NY Closure Orders, the Closure Orders). FAC ¶ 45. Vegas Image could not adopt the COVID-19 risk mitigation measures required by the Nevada Closure Order, causing it to close. *Id.* ¶ 46. LV Candy lost rental income due to its tenant, JDL, being unable to operate as a result of the Nevada Closure Order. *Id.* ¶ 47. Nevada Plaintiffs submitted a claim to Defendant for lost business income due to the Nevada Closure Order, which Defendant denied. *Id.* ¶ 70.

Plaintiffs filed a complaint for breach of contract and related claims for declaratory relief, individually and on behalf of a class consisting of Valley Forge Insurance Company policy holders who made claims to Defendant for COVID-19

---

[3]While the Complaint alleges that World Power Corporation closed, based on context, the Court presumes that Plaintiffs meant Global Air Service.

related losses and whose claims were denied by Defendant. *See* Fac. Defendant now moves to dismiss the complaint pursuant to Rule 12(b)(6).

## Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I. Choice of Law

At the outset, the Court must address a choice-of-law issue. Apparently, the Policies do not contain a choice-of-law provision, as no party directs the Court to any such clause. Defendant "assumes for purposes of [its dismissal] motion that Nevada substantive law applies to the Nevada Plaintiffs' individual claims and New York

6

substantive law applies to the New York Plaintiff's individual claims." R. 32, Memo. Dismiss at 7. Plaintiffs, for their part, contend that "[a]ny differences in common law contractual rules between Illinois, Nevada and New York law do not impact the rule of decision here." R. 35, Response at 5.

"Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (internal citations omitted). As the Court sits in Illinois, it looks to Illinois' choice of law rules. Under Illinois law, in the absence of an express choice of law provision in an insurance policy, courts apply the "most significant contacts" test. *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000). The factors considered under the "most significant contacts" test are: "the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract." *Id.* (international citation omitted). Courts give special emphasis to the location of the insured risk. *Id.*

Courts, however, "forego [a] choice of law analysis when the parties agree on the law that governs a dispute and there is a reasonable relation between the dispute and the forum whose law has been selected." *Home Valu, Inc., v. Pep Boys-Manny, Moe & Jack of Del., Inc.*, 213 F.3d 960, 963 (7th Cir. 2000) (internal citation omitted). Here, clearly New York and Nevada are the jurisdictions with the most significant

contacts in this dispute. And no party contests the application of New York or Nevada law. Therefore, the Court finds that New York substantive law governs the coverage dispute between New York Plaintiff and Defendant and Nevada substantive law governs the coverage dispute between Nevada Plaintiffs and Defendant.

## II. Contract Interpretation

The standard rules of contract interpretation in both New York and Nevada are familiar. In construing an insurance policy, the court's primary function is to ascertain and give effect to the intent of the parties as expressed in the policy language. *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 37 N.E.3d 78, 80 (N.Y. 2015); *United Nat'l Ins. Co. v. Frontier Ins. Co.,* 99 P.3d 1153, 1156–57 (Nev. 2004) (internal citations omitted). "[U]nambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of a law for the court." *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 884 N.E.2d 1044, 1047 (N.Y. 2008) (internal quotation and citation omitted); *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011). Ambiguity arises when the contract, read as a whole, "fails to disclose its purpose and the parties' intent, or where its terms are subject to more than one reasonable interpretation." *Universal Am. Corp.*, 37 N.E.3d at 80 (internal quotation and citations omitted); *see also United Nat'l Ins. Co.,* 99 P.3d at 1157 ("The question of whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted."). That said, contract provisions are not

ambiguous "merely because the parties interpret them differently." *Universal Am. Corp.*, 37 N.E.3d at 80 (internal quotation and citation omitted).

Under both New York and Nevada law, the insured bears the initial burden of demonstrating the existence of a claim that falls within the coverage provided by an insurance policy. *Roundabout Theatre Co v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 7 (N.Y. App. Div. 2002); *Zurich Am. Ins. Co. v. Ironshore Specialty Ins. Co.,* 964 F.E.3d 804, 810 (9th Cir. 2020) (applying Nevada law). If the insured establishes that its claim is covered by the policy, then the burden shifts to the insurer to show that an exclusion applies. *Id.*

### III.    Business Income and Extra Expense Coverage

Plaintiffs assert in Count I (breach of contract), Count III (breach of contract), Count V (declaratory judgment), and Count VII (declaratory judgment) that they are entitled to business income and extra expense coverage under the Policies due to losses incurred as a result of the Closure Orders. *See* FAC.

Defendant argues that Plaintiffs' claims based on business income coverage fail because the Policies do not cover Plaintiffs' alleged losses. Memo. Dismiss at 8–12. Defendant contends that Plaintiffs have failed to allege the required "direct physical loss or damage" to their property, and insists that "physical loss" and "physical damage" require a tangible alteration in the property's material state, which Plaintiffs fail to allege. *Id.* Instead, asserts Defendant, Plaintiffs allege that they "were forced to suspend or reduce their business" pursuant to the Closure Orders. *Id.* at 10 (citing FAC ¶ 17). Even though Plaintiffs further allege that their

insured property was rendered "unusable in a way that it had been used before COVID-19" and was "unsafe for its intended purpose" due to risk of transmission, Defendant argues that the absence of any allegation of an actual and physical damage is fatal to Plaintiffs' claims. *Id.* (citing FAC ¶¶ 4, 32). Defendant's position is supported by the decisions of numerous courts who have considered similar insurance policies involving claims for COVID-19 related losses and rejected the claims in the absence of an allegation of "actual physical damage" to the insureds' property. *See Sandy Point Dental, PC v. The Cincinnati Ins. Co.*, 2020 WL 5630465, at \*2 (N.D. Ill. Sept. 21, 2020); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 2020 WL 5500221, at \*4 (S.D. Cal. Sept. 11, 2020); *Turek Enters., Inc. v. State Farm Mut. Auto Ins. Co.*, 2020 WL 5258484, at \*8 (E.D. Mich. Sept. 3, 2020).

Not surprisingly, Plaintiffs disagree with Defendant's interpretation of the Policies. Plaintiffs maintain that "direct physical loss or damage" does not require structural alteration. Resp. at 6. Alternatively, Plaintiffs posit that even if the Policies require structural alteration, they have pled such alteration in the form of infestation by a harmful agent (namely, COVID-19 particles dangerous to human health), diminishment of functional space, and loss of functionality of covered property. *Id.* at 9.

The Court begins its analysis, as it must, with the Policies. The Policies provide coverage for a loss caused by "direct physical loss or damage" to the property. Nevada Policy at CM/ECF 17, 39; New York Policy at CM/ECF 16, 38. The Policies do not define "direct physical loss or damage." No matter, as the Court may resort to

dictionary definitions to ascertain the plain and ordinary meaning of words. *See Century Sur. Co. v. Casino West, Inc.*, 329 P.3d 614, 617 (Nev. 2014); *Ragins v. Hosps. Ins. Co., Inc.*, 22 N.Y.3d 1019, 1022 (N.Y. 2013). Moreover, an insurance policy, like any contract, is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose. *Mendenhall v. Tassinari*, 403 P.3d 364, 373 (Nev. 2017); *Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Cap., Inc.*, 92 N.E.3d 743, 748 (N.Y. 2017). With these basic principles in mind, the Court notes that in the Policies, the terms "loss" and "damage" are modified by the words "direct" and "physical." Nevada Policy at CM/ECF 17, 39; New York Policy at CM/ECF 16, 38. "Direct" is self-explanatory. "Physical" means "of, relating to, or involving material things; pertaining to real, tangible objects." *Physical*, Black's Law Dictionary (11th ed. 2019). Accordingly, any "loss" or "damage" must be both direct and physical.

Furthermore, "loss" seemingly cannot mean the same thing as "damage." *See Mendenhall*, 403 P.3d at 373; *Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, Nat'l Ass'n*, 92 N.E.3d at 748. "Loss" means "the failure to maintain possession of a thing." *Loss*, Black's Law Dictionary (11th ed. 2019). But "damage" means "[l]oss or injury to person or property; esp., physical harm that is done to something or to part of someone's body." *Id.* at *Damage*. It is clear that any "direct physical damage" must be a *physical* harm. And, applying the plain and ordinary meaning of the phrase "direct physical loss", the Court finds that the Policies require

some form of actual physical damage to the insured property to trigger coverage. *See also Michael Cetta Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 180 (S.D.N.Y. 2020) ("[T]he term 'loss' would seem to include 'theft or misplacement,' which would not constitute damage to the property. Further 'loss' would extend to the *complete* destruction of property, whereas 'damage' contemplates a lesser injury. . . As an illustrative example, a tornado that destroys the entirety of the restaurant results in a 'loss of' the restaurant, while a tree falling on part of the kitchen would represent 'damage to' the restaurant.") (emphasis in original) (internal quotations and citations omitted). To conclude otherwise is to ignore the plain meaning of the Policies.

The remaining language in the Policies supports this position. Under the Policies, an insured must sustain an actual loss of income due to a necessary suspension of their property during the period of restoration. The period of restoration ends on the earlier of:

> (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location.

Nevada Policy at CM/ECF 34; New York Policy at CM/ECF 33. Clearly, the Policies contemplate that the insured's property would need to be repaired, rebuilt, or replaced due to the "direct physical loss." This suggests "the occurrence of material harm that then requires a *physical fix*." *Michael Cetta Inc.*, 506 F. Supp. 3d at 177 (emphasis added).

The Court's conclusion is in line with decisions of numerous courts that have concluded that "physical loss or damage" requires tangible or concrete injury to the

12

insured's property. *See Benny's Famous Pizza Plus Inc. v. Sec. Nat'l Ins. Co.*, 2021 WL 3121495, at *4 (N.Y. App. Div. July 1, 2021) (collecting cases and stating that "all New York courts applying New York law . . . have soundly rejected the argument that business closures due to the presence of the COVID-19 virus or due to New York State Executive Orders constitute physical loss or damage to property"); *Michael Cetta Inc.*, 506 F. Supp. 3d at 176 (applying New York law to find that "phrase 'direct physical loss of or damage to' connotes 'a negative alteration in the *tangible* condition of property.") (emphasis added); *Levy Ad Grp., Inc. v. Chubb Corp.*, 519 F. Supp. 3d 832, 836 (D. Nev. 2021) (finding that the Nevada Supreme Court has held that "direct physical loss or damage" means some structural or physical change to a property which alters its functionality or use and that the Ninth Circuit has agreed with such a reading) (internal citations omitted).

Plaintiffs lean heavily on *Studio 417, Inc. v. The Cincinnati Ins. Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020) and *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 2020 WL 5637963 (W.D. Mo. Sept. 21, 2020), among other cases, for support that the coronavirus may cause a physical loss to property warranting coverage. Resp. at 15–16. None of these cases cited by Plaintiffs, however, applied New York or Nevada law. Instead, those courts applied the law of other states to conclude that, as interpreted by those state courts, it was at least possible to construe the policy language regarding physical loss to allow coverage even absent a physical alteration if the space was unusable. While Plaintiffs invite the Court to adapt the analyses of courts from other jurisdictions, the Court must decline. The Court must follow the decision

13

of courts in New York and Nevada applying the laws of those respective states. *See Deer Mountain Inn LLC v. Union Ins. Co.*, 2021 WL 2076218 (N.D.N.Y. May 24, 2021); *Project Lion LLC v. Badger Mut. Ins. Co.*, 2021 WL 2389885 (D. Nev. May 19, 2021).

Plaintiffs contend that even if a structural alteration is required, they have pled such alteration in the form of: (i) infestation by a harmful agent; and (ii) diminishment of functional space and loss of functionality of covered property. Resp. at 9–12 (citing *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E. 2d 926 (Ill. 1991) and *Gen. Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147 (Minn. Ct. App. 2001), among other cases). The Court addresses each "asserted alteration" in turn.

Starting with infestation, nowhere in the Complaint do Nevada Plaintiffs allege that their property was *infested* by the coronavirus. *See* FAC. At most, Nevada Plaintiffs allege in a conclusory fashion that "the presence of COVID-19 caused direct physical loss of or damage to the covered property." FAC ¶ 49. The allegation that there was a general presence of COVID-19 which, as Nevada Plaintiffs allege, had "spread . . . throughout Nevada," is not the same as an allegation of a particular coronavirus infestation at Nevada Plaintiffs' property. *Id.* ¶ 48. New York Plaintiff fares no better, as the Complaint also fails to allege any infestation of coronavirus at New York Plaintiff's property. The Court agrees with Defendant that the cases cited by Plaintiffs are distinguishable.

In *U.S. Fid. & Guar. Co.*, asbestos-containing products had been installed in the insured's property which required removal to render the property safe again. 578

N.E. 2d at 931. In *Gen. Mills, Inc.*, the insured's property was infested by a pesticide, rendering the insured unable to distribute its products produced at that property. 622 N.W.2d at 150. Here, Plaintiffs do not allege that the coronavirus was present at their properties. Each of the other cases cited by Plaintiffs in support of their argument that infestation of property by microscopic entities that are harmful to humans constitutes "direct physical loss or damage" are distinguishable for the same reason: they all involved known contamination or the presence of some external agent or infestation of the insured's property. *See Neth. Ins. Co. v. Main St. Ingredients, LLC*, 745 F.3d 909 (8th Cir. 2014) (Salmonella infestation at insured's property); *Stack Metallurgical Servs., Inc. v. Travelers Indem. Co. of Conn.*, 2007 WL 464715 (D. Or. Feb. 7, 2007) (insured's furnace contaminated by lead particles).

Finally, regarding loss of functionality, Plaintiffs contend that due to COVID-19, their property became unsafe for its intended purpose and, thus, they suffered physical loss or damage. Resp. at 12–13. The Court disagrees. Defendant correctly points out that "economic loss resulting from Plaintiffs' inability to use their premises, untethered to direct physical loss or damage, is not covered under Plaintiffs' policies." Reply at 8 (citing Nevada Policy at CM/ECF 22; New York Policy at CM/ECF 21 (excluding coverage for consequential damages resulting from "loss of use")). Moreover, "[l]osing the ability to use otherwise unaltered or existing property simply does not change the physical condition or presence of that property and therefore cannot be classified as a form of 'direct physical loss' or 'damage.'" *Michael Cetta Inc.*, 506 F. Supp. 3d at 176; *see also Circus Circus LV, LP v. AIG Specialty Ins.*

15

*Co.*, 2021 WL 769660, at *4 (D. Nev. Feb. 26, 2021) (finding that a temporary loss of use does not equate to a "direct physical loss"). The Court's interpretation of the Business Income/Extra Expense coverage aligns with the majority of courts to have considered the issue, who have concluded that "loss of use of a premises due to a governmental closure order does not trigger business income coverage premised on physical loss to property." *Michael Cetta Inc.*, 506 F. Supp. 3d at 179 (collecting cases); *see also Project Lion LLC*, 2021 WL 2389885, at * 3 (noting that numerous courts have rejected the argument that the temporary closure of a premises because of a government shut-down order should be a covered loss under an insurance policy).

The Court finds, in viewing the allegations of the Complaint in the light most favorable to Plaintiffs, the non-movants, and drawing all reasonable inferences in their favor, that Plaintiffs fail to state a cause of action for breach of contract and declaratory relief regarding the Policies' Business Income/Expenses provisions.

### IV. Civil Authority Coverage

In Counts II and VI, Plaintiffs seek coverage under the Policies' Civil Authority provision (*see* FAC), which applies when a public official "prohibits access to the described premises . . . due to direct physical loss of or damage to property" at other locations caused by or resulting from a Covered Loss and the act of the public official causes a loss of business income or extra expense. Nevada Policy at CM/ECF 65; New York Policy at CM/ECF 62. The plain language of the Policies thus requires Plaintiffs

to plead actual physical loss to claim coverage under the Civil Authority provision, similarly to the requirements under the Business Income/Extra Expense provision.

Defendant argues that a civil authority order, like the Closure Orders, does not trigger coverage "even if it precludes access to the insured's premises, unless it is due to physical loss of or damage to other properties." Memo. Dismiss at 13. Additionally, Defendant contends that Plaintiffs fail to allege damage to any property near Plaintiffs' property. *Id.* Nor do Plaintiffs allege that the Closure Orders required Plaintiffs to close, much less prohibit access to, their properties. *Id.* at 13–14. Plaintiffs retort that they have alleged that "they were subject to civil authority orders issued in response to dangerous physical conditions resulting from direct physical loss or damage to properties other than their own premises, and that the orders prohibited access to their premises." Resp. at 18 (citing FAC ¶¶ 44–66, 68, 96).

The Court finds that Plaintiffs fail to allege coverage under the Civil Authority provision. First, the Complaint fails to allege any damage to property near Plaintiffs' properties. *See Michael Cetta Inc.*, 506 F. Supp. 3d at 183 ("Without specific allegations that a neighboring property suffered 'damage to property,' the Complaint fails to state a claim that is plausible on its face as to [the insured's] entitlement of civil authority coverage."); *see also Levy Ad Grp., Inc.*, 519 F. Supp. 3d at 837–38 (dismissing claims related to civil authority coverage based on the plaintiffs' failure to allege any direct physical loss or damage to their own property or their neighbor's

property and failure to allege any connection between the stay-at-home orders and any perceived physical damage).

Second, the Complaint fails to allege that access to Plaintiffs' properties was denied. True, the Complaint alleges that the effect of the Closure Orders was to impose limitations on Plaintiffs' operations. *See* FAC ¶¶ 5, 62. However, as Defendant correctly points out, "imposing limitations on operations is not the same as 'prohibiting access'" to Plaintiffs' properties. Reply at 13. In short, Plaintiffs fail to allege damage to property other than their own and even if such an allegation had been made, they also fail to allege that the any civil authority actions prohibited access to Plaintiffs' properties.

The Court finds, in viewing the allegations of the Complaint in the light most favorable to Plaintiffs, the non-movants, and drawing all reasonable inferences in their favor, that Plaintiffs fail to state a cause of action for breach of contract and declaratory relief regarding coverage under the Policies' Civil Authority provisions.

## V. Sue and Labor Provision

Plaintiffs assert breach of contract and declaratory judgment claims under the Policies' Sue and Labor Provisions in Counts IV and VIII. *See* FAC. Defendant argues that the "Sue and Labor" provision is not a coverage provision, but rather imposes a duty on the insured. Memo. Dismiss at 14–15. Plaintiffs do not directly address this

18

argument, but instead respond that they are entitled to costs incurred in connection with reasonable steps to comply with the Closure Orders. Resp. at 20.

The Policies provide under a section entitled "Duties in the Event of Loss or Damage" that Plaintiffs must, among other things, "[t]ake all reasonable steps to protect the Covered Property from further damage, and keep a record of [Plaintiffs'] expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." Nevada Policy at CM/ECF 25; New York Policy at CM/ECF 24. This provision is commonly referred to as "Sue and Labor" coverage. FAC ¶ 38.

The Court finds, in applying the plain language of the Policies, that this provision is not a coverage provision, but instead imposes certain mitigation obligations on the insured when it submits a claim. Accordingly, again, the Court finds that Plaintiffs fail to state a cause of action for breach of contract and declaratory relief regarding coverage under the Policies' Sue and Labor provisions.

## Conclusion

For the reasons given above, the Court grants Defendant's Motion to Dismiss [31], and the Court dismisses this case with prejudice. The dismissal is with prejudice, as Plaintiffs neither suggest how they might cure the defects nor request leave to amend in the event of dismissal. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with

prejudice where a party does not make such a request or showing."); *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in . . . dismissing a complaint with prejudice . . . when the plaintiff fails to demonstrate how [an] amendment would cure the deficiencies in the prior complaint."). This civil case is terminated.

Dated: September 30, 2021

United States District Judge
Franklin U. Valderrama